

**HEALTH CARE PROGRAMS**
Addictions and Mental Health Division

Kate Brown, Governor
May 24, 2017

Hand-Delivered

# Health

FILED
CHARLOTTE, NC

JAN 17 2019

US District Court
Western District of NC

The Honorable Frances E. Burge
Douglas County Circuit Court
Justice Building Room 201
1036 SE Douglas
Roseburg, Oregon 97470

RE:     BRUNSON, OMARI JIBRI
        OSH#: 85910 / 76464
        UNIT: TR3 – FPS

Dear Judge Burge:

Please find enclosed the Evaluation Report on the above-named individual.

As the Oregon State Hospital evaluator I have concluded that the defendant is able to aid and assist in his defense. Patients who are currently at the Oregon State Hospital for restoration treatment are generally discharged to jail within 48 to 72 hours after being found fit to proceed or not restorable.

If you have any questions, please contact me at the telephone number shown at the bottom of this page.

Sincerely,

Lindsay Ingram, Psy.D.
Licensed Psychologist & Certified Forensic Evaluator
Forensic Evaluation Service
Oregon State Hospital

LI/lr
Enclosure
I:\PATIENT REPORTS\10\85910\17-05-23 COV.docx

2600 Center Street NE
Salem, OR 97301-2682
Voice: 503-945-2800
Fax: 503-945-2807
TTY: 800-735-2900



OREGON STATE
HOSPITAL
HOPE · SAFETY · RECOVERY

If you need this letter in an alternate format, please call 503-945-5763 or TTY: 800-735-2900.

## Collateral Information

### Douglas County Jail records, various dates

Douglas County Jail records indicate Mr. Brunson was incarcerated on 03/14/2017. Jail incident reports demonstrate that Mr. Brunson received disciplinary write-ups for disorderly conduct for not following deputy orders on 03/31/2017. His admission paperwork from the jail to Oregon State Hospital indicated that there were no mental health concerns.

### Previous Fitness to Stand Trial evaluation authored by Dr. Guyton, dated 03/28/2017

Dr. Guyton described Mr. Brunson as engaged during her evaluation, but stated that he demonstrated pressured speech and disorganized thoughts. She noted that he presented with a "variety of unusual beliefs" to include those similar to the sovereign citizen and/or Black national movements. However, she also reported that some of his beliefs were grandiose and delusional in nature, and not related to these subcultural beliefs. Dr. Guyton diagnosed Mr. Brunson with bipolar disorder and cannabis use disorder. Dr. Guyton reported that Mr. Brunson's grandiose and paranoid beliefs, outside of the sovereign citizen/black nationalist beliefs, and symptoms of mania "impaired his psycholegal abilities." It was Dr. Guyton's opinion that he was not fit to proceed.

## Hospital Course and Current Psychotropic Medication

Mr. Brunson was admitted to Oregon State Hospital on 04/11/2017. Upon admission he was described as cooperative, but upset and frustrated over his hospitalization which he felt was illegal. He was reported to be perseverative on his beliefs about gold currency, nationality, and other beliefs associated with the sovereign citizen's movement. Some staff noted that his reported past jobs/titles appeared grandiose. His psychology admission assessment noted,

> It appears Mr. Brunson's primary barrier to competency are his grandiose and paranoid beliefs. Mr. Brunson's beliefs significantly affected his ability to discuss his legal case as Mr. Brunson perseverated on his subcultural beliefs. He believed his "indigenous" background made him exempt to current laws, including his current charges.

Notes from hospital staff indicate that Mr. Brunson endorsed his beliefs about the gold standard, rights associated with his nationality, his beliefs about what he can own or do due to his nationality/place of birth, and concerns about racial profiling/discrimination during the first several weeks of his admission. As his hospitalization progressed staff noted that he slowly began to endorse these beliefs less often, and would only discuss them when a staff member brought them up. Throughout his hospitalization, he was described as cooperative, social, and polite with his peers and staff. Records indicate that he has been able to appropriately voice his concerns and engaged in organized and goal-directed conversations. There were no indications of pressured or rapid speech.

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

On 04/24/2017 Pablo Mejia, Psy.D., unit psychology resident, wrote,

> Mr. Brunson became defensive when this writer showed him various articles (legal cases, news articles, Wikipedia, etc.) demonstrating Mr. Brunson's ideologies not having supportive evidence in court when it came to understanding his charges. Mr. Brunson appears to be combining the religious beliefs of the "Moorish Science Temple of America" and the "sovereign citizens" movement. Mr. Brunson denied he was affiliated with the sovereign citizens movement but contradicted himself in espousing these beliefs as being part of the Moorish Science Temple. Mr. Brunson attempted to quote the "United Nations Declaration on the Rights of Indigenous Peoples" referring to his "indigenous Moors" background as being one of the indigenous peoples the document was referring to. When this writer pointed out that the Moors were not a federally recognized tribe of the United States, Mr. Brunson became argumentative and unable to support his beliefs without any tangible evidence. It was at this point this writer realized Mr. Brunson appears to be confused by his beliefs but he presents as being convinced he is correct. Granted, this writer does not know the full extent of either ideology. However, from what this writer was able to quickly gather through online research, it appears Mr. Brunson has been misinformed.

Poonima Ranganathan, M.D., Mr. Brunson's unit psychiatrist, noted that she met with him individually on 04/26/2017. She noted,

> Regarding his legal situation, he said he did not want to talk about his beliefs if it meant he would be held hostage for longer. He said he was more in favor of getting credit for time served and getting back to being with his family.

On 05/05/2017, Dr. Ranganathan wrote,

> I am not seeing much in terms of a genuine thought disorder at this time. He presents with some narcissism and grandiose thinking but they do not amount to delusional status. The rest of his beliefs can be attributed to the group ideologies he believes in and are shared by several people who follow them.

On 05/12/2017, she wrote,

> Regarding his current hospital stay, Omari continues to express frustration over the wrongfulness of his arrest. He blames the system's (courts, defense attorney) lack of knowledge about 'my religion' for their decision making. He is appalled by their thinking that he could be mentally ill just because they don't know about 'his religion'. He is currently perseverating about the executive order signed by the President promoting free speech and religious liberty. He does feel like this order greatly affects his current situation. Omari wanted me to fax a copy of this order to his attorney along with some of the other paperwork he had relating to proclamations signed by mayors recognizing the Moors, UN proclamation of aboriginal rights and the copy of his evaluation in which he had noted several errors.

> [...] I do not see any evidence of an axis I disorder at this time. The patients beliefs are a result of him endorsing the Moorish Science Temple and Sovereign Citizens (even though he does not admit to this there is a significant overlap). His inability to agree with his attorney could be due to following these groups philosophies but is not due to a mental illness that can be treated.

A referral for an early forensic evaluation was submitted Dr. Ranganathan on 05/19/2017. She wrote "Patient has knowledge of the legal system. His beliefs in Moors Temple of Science and Sovereign Citizens movement might impede his ability to cooperate but he has not displayed any symptoms of a mental illness."

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

## Competency Assessment

Oregon Revised Statute (ORS) 161.360 states: "(2) A defendant may be found incapacitated if, as a result of mental disease or defect, the defendant is unable (a) To understand the nature of the proceedings against the defendant; or (b) To assist and cooperate with the counsel of the defendant; or (c) To participate in the defense of the defendant." Mr. Brunson demonstrated good knowledge of court-related information. In the few areas in which he required education to be provided to him, he was able to learn new information without significant difficulty. The following is a summary of his knowledge at the end of our interview.

Mr. Brunson was aware of his charges, demonstrated awareness that he was facing two misdemeanor charges, and knew that a felony charge was more serious than a misdemeanor charge. He was aware that he would receive no punishment if he was found to be not guilty in his case. The defendant was aware of basic information regarding his plea options of guilty, not guilty, no contest, and guilty except for insanity. He was able to discuss possible verdicts and penalties related to his case. He was able to discuss the plea bargaining process, understood that it was his choice to accept one, and knew which rights he would lose should he choose to take one. He was aware of basic information regarding appeals, contempt of court, perjury, probation, evidence, and courtroom personnel. He understood that he could not be forced to testify and demonstrated good knowledge of how one should comport themselves in court.

The defendant knew that the judge would determine if he was guilty or not guilty in his case. He knew that the judge would believe that he was innocent until proven guilty, was neither on his side nor against him, and would have to be "beyond a reasonable doubt" in order to convict him. He demonstrated adequate knowledge about juries. Mr. Brunson knew that the prosecuting attorney was his legal adversary and his attorney was his legal advocate. He was aware that the things he discussed with his attorney were private, that all defendants had the right to an attorney, and that it was his choice how he would proceed in his case. While he was uncertain about his attorney's skill and willingness to take Mr. Brunson's culture into account, he felt he could work with his attorney. He appeared to be invested in his case. The undersigned engaged Mr. Brunson in conversation to gauge his rational understanding and appreciation of court. He was able to appropriately engage in a discussion of a hypothetical situation, discuss evidence, explain his thoughts on possible sentences, and articulate why he would or would not accept a plea bargain in these hypothetical cases.

Mr. Brunson discussed multiple legal strategies and indicated that he would like to speak further with his attorney about his options. He demonstrated a practical understanding of the costs and benefits of different options to resolve his case, and appeared to weigh these options in a rational manner. He stated that while he has strong cultural beliefs, he understood that his current legal case may not be

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

the best place to pursue his goals. Mr. Brunson expressed cultural beliefs that are idiosyncratic to the mainstream culture, but are consistent with his subcultural norms. He demonstrated a tendency to focus on legal paperwork, arcane or idiosyncratic rulings, and governmental statements/decisions. He was certain that this information proved that he, and others associated with his culture, are wrongly treated and unfairly discriminated against. His beliefs were somewhat rigid, as he was not entirely amenable to new and/or challenging information. However, he demonstrated insight that others may not be familiar with his culture and may disagree with his opinions and various cited legal cases, orders, and proclamations that he used as "evidence" to support his beliefs. As discussed previously, Mr. Brunson's cultural and political beliefs are idiosyncratic to the mainstream culture, but are not indicative of delusional beliefs and are not signs of a mental illness. These beliefs are well-established within his subculture, and additional information about them can be found via the resources cited previously.

### Diagnostic Impression (DSM-5)
No Diagnosis

Mr. Brunson denied a history of mental illness or psychiatric concerns. He was diagnosed with bipolar disorder in his previous forensic evaluation and with unspecified schizophrenia spectrum and other psychotic disorder during his admission to Oregon State Hospital. These diagnoses appear to have been made based on his self-reported beliefs, which currently appear to be associated with his Moorish cultural heritage and his associated beliefs regarding his religious and legal liberties, which are similar to the sovereign citizen's movement. These beliefs are consistent with his subculture and are not delusional in nature. At this time, there is not sufficient evidence to warrant any psychiatric diagnosis. Mr. Brunson's self-report and the available records do not support significant periods of mania or depression. He has not demonstrated symptoms of psychosis such as hallucinations or delusional beliefs. His belief structure, while unusual to the mainstream culture, is consistent with information about the Moorish culture and similar to the sovereign citizen's movement. While discussing his beliefs, the records indicate that he has demonstrated an increase in affect and energy. However, he has not demonstrated pressured speech associated with mania or disorganized speech associated with psychosis during his hospitalization. At this time, it is the undersigned's opinion that he does not qualify for any psychiatric condition.

Mr. Brunson has previously been diagnosed with cannabis abuse. He reported daily use of cannabis, but denied negative effects from his use and did not endorse any symptoms of a substance use disorder. Since his arrival to Oregon, he reported that he has obtained cannabis legally. Limited collateral information was available to support or refute his self-report. Therefore, at this time, there is not

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by state law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

sufficient evidence to warrant a diagnosis of cannabis abuse, and all other substance use diagnoses are deferred at this time.

### Consideration of Impression Management

Per Oregon Administrative Rule 309-090-0025 forensic evaluation cases require an assessment of impression management. An assessment of impression management entails an evaluation of whether a defendant is responding in an honest and forthright manner, is attempting to feign or exaggerate impairment (i.e. negative impression management), or is attempting to minimize or conceal impairment (i.e. positive impression management).

As noted above, Mr. Brunson has consistently denied any psychiatric symptoms and does not have a history of psychiatric treatment. His belief system is consistent with his subculture and is somewhat amenable to alternative information. Available records, his current course of hospitalization, and the undersigned's observations of the defendant indicate that he has behaved in a manner which is consistent with his subculture. Therefore, the undersigned does not believe that malingering is a factor in Mr. Brunson's case.

### Opinion

Mr. Brunson identifies as an indigenous Moor, and endorses various cultural, legal, and political beliefs consistent with subcultures within the Moorish culture and the sovereign citizen's movement. He presents as psychiatrically stable at this time. Mr. Brunson does not meet diagnostic criteria for a mental disease or defect as described above.

Mr. Brunson is able to understand the nature of the proceedings, participate in his defense, and assist and cooperate with counsel. Specifically, he knew basic information about his charges, the roles of courtroom personnel, his rights as a defendant, and his plea options. He demonstrated good legal knowledge about court. He also demonstrated a strong interest in arcane, unusual, and little known legal rulings/opinions associated with his subcultural beliefs. Mr. Brunson is able to make relevant decisions about his case autonomously. While he endorsed various cultural beliefs, he reported that he understands that his current legal case may not be the appropriate forum to address these concerns. Further, he demonstrated a rational understanding of court and the ability to work with counsel. He stated that defense counsel was concerned about his previous statements, but he felt he would now be able to more appropriately describe his beliefs/culture and direct his attorney to resources to learn more. While he is significantly influenced by his Moorish principles and sovereign citizen's beliefs - which are likely to impact his decision making strategies, relationship with counsel, and preferred legal strategies - these beliefs are not due to a mental disease or defect. He demonstrated the ability to rationally weigh various potential outcomes of his case, and an understanding of the practical advantages of certain

CONFIDENTIAL - This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

She noted that he is not diagnosed with any psychiatric illness, and was not prescribed any psychiatric medications.

Mr. Brunson has denied symptoms of psychosis and mood disturbance during his admission, and none have been observed. His appetite has been good and he has been sleeping well. Mr. Brunson has been able to complete self-care tasks independently. He has not engaged in any aggressive or threatening acts. He has not required any instances of seclusion or restraint. Mr. Brunson attends treatment groups and actively participates. Upon admission, Mr. Brunson's hospital diagnoses included unspecified schizophrenia spectrum and other psychotic disorder as well as cannabis use disorder. He is not prescribed any psychiatric medications.

### Mental Status Examination and Behavioral Observations

The undersigned met with Mr. Brunson in an interview room in the Forensic Evaluation Services area of Oregon State Hospital. The undersigned completed a structured interview of Mr. Brunson's mental status to provide an estimate of his cognitive function and screen for cognitive loss. Mr. Brunson did not demonstrate any significant deficits in his mental status. This evaluation lased approximately 90 minutes.

Mr. Brunson is a 34-year-old black male, who identifies as an "ingenious Moor," who appeared his chronological age. His Moorish cultural beliefs are outlined in the above background information section. He presented to the interview in clean and neat attire, wearing a buttoned flannel shirt and black fez. His grooming and hygiene was good. No behavioral abnormalities were observed. He is of average height and build. He was fully alert and oriented. His eye contact was good. His speech rate, volume, and rhythm were within normal limits. His speech and thoughts were linear, goal directed, and organized. Mr. Brunson readily answered all questions posed to him and appeared to be a good historian. He was engaged in this evaluation and appeared to put forth good effort. His attention and concentration was adequate. He described his mood as "pretty good." His affective range was euthymic and appropriate to the content of conversation.

Mr. Brunson denied any current mental health symptoms or concerns. He endorsed strong cultural beliefs associated with his Moorish heritage, as described above. However, he was not perseverative on these beliefs, demonstrated an understanding that others may view them as untrue, appeared to be mildly guarded in his discussion of them, and was minimally open to mild challenges about them. No hallucinations or delusional thoughts were observed or noted. He indicated that his appetite, sleep patterns, and energy levels were within normal limits. He denied any current homicidal or suicidal ideation. His judgment was good. Mr. Brunson exhibited limited insight into his internal experience and thought processes.

CONFIDENTIAL: This information has been disclosed to you from records whose confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.



# Forensic Evaluation Service
# Oregon Revised Statute 161.370 Evaluation

| | |
|---|---|
| Name | Brunson, Omari Jibri |
| Hospital Number | 85910 / 76464 |
| Date of Report | May 24, 2017 |
| Interview Date | May 23, 2017 |
| Docket Number | 17CR16878 |
| County of Commitment | Douglas |
| Evaluator | Lindsay Ingram, Psy.D. |

## Identifying Information

Mr. Omari Jibri Brunson (DOB: 08/26/1982) is a 34-year-old black, self-identified "indigenous Moor," male who is currently charged with Criminal Trespass in the Second Degree (Misdemeanor C) and Disorderly Conduct in the Second Degree (Misdemeanor B), which are alleged to have occurred on or about 03/14/2017.

Of note, Mr. Brunson reported that his name is Omari Jibri El Ra Bey. He had multiple pieces of paperwork that were signed with the honorary title of "Emperor," but did not utilize that title during this evaluation. He said that he changed his name legally by filing paperwork in North Carolina and federally. However, as court documents refer to him as Mr. Brunson, that name will be used in this report.

Mr. Brunson was admitted to Oregon State Hospital on 04/11/2017 to receive treatment until such time as he might regain fitness due to his incapacity to stand trial under Oregon Revised Statute 161.370(4)(b) in an order signed by the Honorable Frances E. Burge, Judge of Douglas County Circuit Court on 04/04/2017. The current evaluation focused on obtaining relevant information about the defendant's current clinical and psychological condition, his functional abilities associated with his participation in trial, and, if these capacities have been adequately restored.

## Statement of Non-Confidentiality

The undersigned presented the defendant with Oregon State Hospital Patient's Rights – Forensic Evaluation Service. The undersigned observed the defendant as he read the rights to himself. In addition, the undersigned reviewed each right in simplified language. He was notified of the evaluation procedures, how the information would be utilized, and the limits to confidentiality. He was also

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

notified of his right to have counsel present during the evaluation or to consult with counsel prior to participating. Following this procedure, Mr. Brunson signed the document and provided verbal consent to participate.

## Sources of Information

1. Direct Evaluation and Interview with Mr. Brunson by the undersigned on 05/23/2017
2. Previous Fitness to Stand Trial Evaluation authored by Michelle Guyton, Ph.D., dated 03/28/2017
3. Douglas County Circuit Court
    a. Order Finding Defendant Unable to Aid and Assist and Order to Transport In Custody Defendant to the Oregon State Hospital for Treatment (ORS 161.370) dated 04/04/2017
4. Douglas County Sherriff's Office records, various dates
5. Douglas County Jail records, various dates
6. Mental Health Consumer Information Control System (MCICS) dated 05/23/2017
7. Oregon State Hospital
    a. Electronic Medical Record dated 04/11/2017 through 05/23/2017

## Relevant Background Information

The below information was obtained from available records, observations of the defendant, and his self-report.

Developmental and Social History
Mr. Brunson reported that he was born in Ft. Knox, Kentucky, but was raised primarily in North Carolina. He stated that he was an "army brat" as his father was in the military, and his family moved several times. He indicated that his parents separated when he was around seven-years-old, that he lived with his mother after the separation, and that he had regular contact with his father. He stated he is an only child. He reported "awesome" relationships with his father and mother, who currently live on the east coast. He stated that his girlfriend lives in Stockton, California and finds her a strong source of support. He reported a 12-year-old daughter who lives in North Carolina. Mr. Brunson stated that he moved to Days Creek, Oregon in October 2016 to live with friends and to identify ways to give back to the community and make an impact. He said that Oregon and North Carolina have similar state systems, with large rural unincorporated areas, and therefore he felt there were opportunities for him. He reported that he was living with his friends in an RV Park before his arrest.

Educational & Occupational History
Mr. Brunson said that he graduated high school in 2000. He denied a history of special education. He reported that he obtained 26 credits in business management at Bluefield Community College in West Virginia. He said that he

Case 3:11-cr-00320-RJC   Document 28   Filed 01/17/19   Page 9 of 12

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

then took video production and digital media courses at the Art Institute of Charlotte. He indicated he would like to continue his education. Mr. Brunson said that he has held approximately six jobs to include marketing, painting houses, furniture delivery, and restaurants. He indicated that his last formal job was in North Carolina in September 2016. He reported that he has been supporting himself by working for community members in Days Creek, OR to include farming and odd jobs.

Medical History

Mr. Brunson described himself physically as "great." He said that he was shot in the abdomen in 2003, and had surgery to repair the damage, but noted the bullet was not removed because it was too close to his spine and/or other organs for safe removal. He denied a history of seizures, head injuries, loss of consciousness, allergies, or other medical concerns.

Substance Use and Treatment History

Mr. Brunson reported a social history of alcohol use, reporting that he only drank during social events or holidays, and was last significantly inebriated a year ago. He said that he smoked cannabis on a daily basis, using approximately one gram per day, up until his arrest. He denied any negative side effects from his cannabis use and said that it helped him to sleep and aided him in his spiritual practices. He said that he used cocaine and hallucinogens to include psilocybin mushrooms and ecstasy on an experimental basis around the age of 19. He denied a history of using methamphetamine, heroin or other opiates, prescription pills, or inhalants. He reported that he attended a community based substance abuse treatment program around the age of 19 as part of a court diversion program.

Psychiatric History & Cultural and Spiritual Beliefs/Practices

Mr. Brunson denied a history of psychiatric symptoms or periods of mental health treatment. He denied ever experiencing significant periods of depression, anxiety, or mania. He denied all symptoms associated with psychosis. He denied ever receiving mental health care while incarcerated. He stated that this is his first psychiatric hospitalization. He denied a history of psychiatric medications. The Mental Health Consumer Information Control System (MCICS) revealed Mr. Brunson has not previously been scheduled to receive any inpatient or outpatient mental health treatment within the public sector of Oregon.

Mr. Brunson identified as an indigenous Moor. His report about his culture, nationality, and heritage was consistent with available information regarding the Moorish culture and the Moorish Science Temple[1]. His preferred last name is common in Moorish communities. However, Mr. Brunson endorsed several beliefs that are outside of the Moorish Science Temple beliefs, and are closely

---

[1] The Moorish Science Temple of America website has information about this nationality and associated beliefs: https://www.msta1928.org/nationality

CONFIDENTIAL: This Information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal

related to the sovereign citizen's movement, which has become more common in many individuals identifying as Moorish in recent years[2]. This set of subculture beliefs are primarily associated with what he perceives as his legal rights, and the ways in which various United States government, and international bodies, legal practices and documents either uphold his status as an indigenous Moor or undercut the rights that are due to him and his culture. His writing style and tendencies (i.e. putting the copyright sign after his signature on the Patient's Rights form in this evaluation) as well as focus on old legal documents and arcane rulings are also common within this subculture. He has adamantly denied any affiliation with the sovereign citizen's movement, but available information indicates that many of his beliefs match those of the sovereign citizen's[3]. Records indicate that Mr. Brunson has reported that he believes he is due formal recognition of, and the legal rights associated with, being an indigenous person to include land rights. During this evaluation, he referenced a United Nations treaty regarding aboriginal and indigenous peoples, President Trump's recent proclamation about religious liberties, and several other legal cases. These beliefs, and past statements about his beliefs in the available records, are consistent with the subculture with which he identifies and are not indicative of delusional beliefs.

Mr. Brunson reported that his religious faith is Ifa. He said that this is a "cultural based spirituality" that is strongly connected with his "spiritual ancestors" and the "pursuit of liberty." He stated that his fez is a part of his religious and cultural wear. He stated that this spirituality/religion is one that utilizes and "researches" various other religious practices to include Christianity, Islam, Buddhism and more. A cursory Google search demonstrated that Ifa is an earth centered monotheistic spiritual tradition originating from the West African Yoruba peoples.

---

[2] The Southern Poverty Law Center (SPLC) published an article on 08/24/2011 regarding Moorish groups and the sovereign citizen's movement. https://www.splcenter.org/fighting-hate/intelligence-report/2011/%E2%80%98sovereigns%E2%80%99-black

The Anti-Defamation League published an article on 07/18/2016 also outlining various Moorish nation principles and the similarities to the sovereign citizen's movement: https://www.adl.org/blog/the-washitaw-nation-and-moorish-sovereign-citizens-what-you-need-to-know

[3] For additional information about the sovereign citizen's movement, please refer to these resources:
- A general article about the movement from the SPLC: https://www.splcenter.org/fighting-hate/extremist-files/ideology/sovereign-citizens-movement
- A 2011 article from the FBI: https://leb.fbi.gov/2011/september/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement
- The sovereign citizen redemption manual is available to download online: *Redemption Manual 4.5 Edition*

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.

plea options over his desire to promote the legal and political recognition/rights that he believes is due.

Therefore, based on the above information, it is the undersigned's opinion to a reasonable degree of professional certainty that the defendant currently possesses a rational and factual understanding of court, and the ability to assist counsel in his own defense. It is the opinion of the undersigned that Mr. Brunson has the present capacity to stand trial.

### Recommendations

Due to Mr. Brunson's Moorish principles and endorsement of many beliefs associated with the sovereign citizen's movement, he may be a difficult defendant with which to work. However, his beliefs, choices, and actions are not due to a mental illness and are consistent with his subculture. Therefore, any difficulties and/or delays in resolving his legal case are likely volitional and rational.

If you have any questions pertaining this evaluation, please do not hesitate to contact me.

Respectfully submitted,

Lindsay Ingram, Psy.D.
Licensed Psychologist & Certified Forensic Evaluator
Forensic Evaluation Service
Oregon State Hospital

D. 05/24/17
R. 05/24/17 – 0908 hours
T. 05/24/17

I:\PATIENT REPORTS\10\85910\17-05-23 COL.docx

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State law (ORS 179.505) and Federal law (45 CFR, Part 164). You are prohibited from making further disclosure without specific consent of the person or as otherwise permitted by law.